## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **SOVEREIGN PEAK VENTURES, LLC,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **JURY TRIAL DEMANDED** |
| **VERIFONE, INC.,** | § § § | **CASE NO. _____** |
| **Defendant.** | § § § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Sovereign Peak Ventures, LLC ("SPV") files this Amended

Complaint against Defendant Verifone, Inc. ("Verifone" of "Defendant") for

infringement of U.S. Patent No. 8,374,152 (the "'152 patent") (attached as Exhibit

A), U.S. Patent No. 8,442,569 (the "'569 patent") (attached as Exhibit B), U.S.

Patent No. 8,467,723 (the "'723 patent") (attached as Exhibit C), and U.S. Patent

No. 8,792,453 (the "'453 patent") (attached as Exhibit D), collectively, the

"Asserted Patents."

## **THE PARTIES**

1. Sovereign Peak Ventures, LLC is a Texas limited liability company,

located at 812 West McDermott Drive, Suite 1069, Allen, Texas 75013.

2.      Upon information and belief, Verifone, Inc. is a privately held corporation organized under the laws of Delaware, with at least one regular and established place of business in Georgia, and in this District, at 11700 Great Oaks Way Suites 150, 200 & 210, Alpharetta, GA, USA 30022.  Verifone, Inc. is registered to do business in Georgia.  Verifone may be served with process via its registered agents, including at least Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA, USA 30092, and/or via Verifone's corporate officers.

3.      Upon information and belief, Verifone, Inc. has been the "principal operating subsidiary" of Verifone Systems, Inc. at least since Verifone Systems, Inc. was acquired by an investment group led by Francisco Partners in 2018.  *See Form 10-K Annual Report of Verifone Systems, Inc. for the Fiscal Year Ended October 31, 2017*, at 4, 50, 88, *available at* https://www.sec.gov/Archives/edgar/data/1312073/000131207317000047/pay10k1 0312017.htm (last visited July 18, 2025) ("2017 Annual Report"); *Verifone to be Acquired*, VERIFONE (April 9, 2018), https://www.verifone.com/index.php/en/us/press-release/verifone-be-acquired (last visited July 18, 2025); *Francisco Partners Completes Acquisition of Verifone*, VERIFONE SYSTEMS, INC. FRANCISCO PARTNERS, AND BRITISH COLUMBIA INVESTMENT MANAGEMENT CORPORATION,

https://www.sec.gov/Archives/edgar/data/1312073/000119312518253049/d611857 dex991.htm (Aug. 20, 2018) (last visited July 18, 2025). On information and belief, Verifone has "managed [its] business as a single business unit" that "is focused on delivering seamless and simple-to-implement solutions that are integrated with [Verifone's] services offerings, including [Verifone's] device, payment, commerce and security-related services offerings." *See* 2017 Annual Report at 5. Verifone has operated using "two global product lines: Verifone Systems and Verifone Services." *See id.* One product line related to systems has "deliver[ed] point of sale electronic payment devices that run [Verifone's] unique operating systems, security and encryption software, and certified payment software for both payments and commerce." *See id.* The other product line related to services has "deliver[ed] device-related leasing and maintenance, payment transaction routing and reporting, and commerce-based services such as advertising on digital screens." *See id.*

     4.     Upon information and belief, Verifone conducts business in the United States, including importing, distributing, making, using, selling, and/or offering to sell mobile devices (e.g., mobile Point-of-Sale terminals), that incorporate devices, systems, and processes that infringe the Asserted Patents in Georgia and this judicial district. *See, e.g.*, *Thanks for dropping by*, VERIFONE, INC., https://www.verifone.com/en/global/contact/contact-us (last visited July 18,

2025) (Stating, "Our teams of experts are ready to design a payment solution that perfectly matches your business needs.  Tell us a little more about your requirements," and under the heading "Where We're Located," listing the address, "Verifone, 11700 Great Oaks Way, / Suites 150 & 200 / Alpharetta, GA, USA / 30022."); *Notice*, VERIFONE (May 20, 2025) *available at* https://verifone.cloud/docs/sca-functional-specification/revision (last visited July 18, 2025) (listing an address at "Verifone, Inc., North America Development, The Royal Center Four, 11700 Great Oaks Way, Suite 210, Alpharetta, GA 30022"). Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Verifones's mobile devices with distributors and customers operating in and maintaining a significant business presence in the U.S., in addition to offering its services nationally, Verifone does business in the U.S., the state of Georgia, and in the Northern District of Georgia.

## JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      On information and belief, Verifone is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Georgia Long

Arm Statute, due at least to its substantial business in this State and judicial

district, including: (A) at least part of its own infringing activities alleged herein;

and (B) regularly doing or soliciting business, engaging in other persistent conduct,

and/or deriving substantial revenue from infringing goods offered for sale, sold,

and imported and services provided to Georgia residents. Verifone has conducted

and regularly conducts business within the United States and this District.

Verifone has purposefully availed itself to the privileges of conducting business in

the United States, and more specifically in Georgia and this District. Verifone has

sought protection and benefit from the laws of the State of Georgia by placing

infringing products into the stream of commerce through an established

distribution channel with awareness and/or intent that they will be purchased by

consumers in this District. For example, Verifone itself states that "Verifone is a

global payments technology company delivering distinctive payment experiences

for everyone, everywhere." *See The Future of Payments is Boundless*, VERIFONE,

https://www.verifone.com/en/us/about-us (last visited July 18, 2025) ("165+ /

Countries With Verifone Solutions," and "$8T+ Annual Payment Transaction

Volume"). On a webpage indicating that Verifone is available to assist customers

in need of payment solutions and explaining how to "make a purchase," Verifone

lists an office in Alpharetta, Georgia, in this District, under the heading "Where

We're Located." *See, e.g.*, *Thanks for dropping by*, VERIFONE, INC.,

https://www.verifone.com/en/global/contact/contact-us (last visited July 18, 2025) (Stating, "Our teams of experts are ready to design a payment solution that perfectly matches your business needs.  Tell us a little more about your requirements," and under the heading "Where We're Located," listing the address, "Verifone, 11700 Great Oaks Way, / Suites 150 & 200 / Alpharetta, GA, USA / 30022."); *Notice*, VERIFONE (May 20, 2025) *available at* https://verifone.cloud/docs/sca-functional-specification/revision (last visited July 18, 2025) (listing an address at "Verifone, Inc., North America Development, The Royal Center Four, 11700 Great Oaks Way, Suite 210, Alpharetta, GA 30022").

8.     This Court has personal jurisdiction over Verifone, directly and/or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers.  Through its own activities, and through direction and control of others, including but not limited to alter egos, Verifone has committed acts of direct and/or indirect patent infringement within Georgia, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Georgia such that personal jurisdiction over Verifone would not offend traditional notions of fair play and substantial justice.

9.     Verifone infringes the '152 patent, '569 patent, '723 patent, and '453 patent by making, selling, importing, offering to sell, and using Verifone devices with cellular capabilities.  For example, the infringing products include Verifone

mobile devices that include functionality for performing an inter-RAT handover and LTE-enabled mobile devices that are configured to utilize infringing licensed assisted access (LAA) modems on wireless networks.  Examples include 4G- and 5G-enabled mobile devices.  The Accused Products include, but are not limited to, devices such as the Verifone Victa, T650p, V400m, T650c, T650m, Carbon Mobile 5, e235 devices.  Upon information and belief, Verifone makes, uses, offers for sale, sells, and/or imports the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the Asserted Patents in the United States, Georgia, and this District.

10.     Via Verifone's own activities, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers maintaining a business presence, operating in, and/or residing in the U.S., Verifone's products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed, and sold in retail stores, brick and mortar and/or online, in Georgia including within this judicial district.  *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of

the United States for importation into and sales to end users in the U.S. may

constitute an offer to sell under § 271(a)). For example, Verifone devices are sold

to end users by Verifone, Verifone's subsidiaries, distributors, and/or customers,

including, but not limited to, via online and/or retail stores, with these end users

and/or sellers being located in the Northern District of Georgia. *See, e.g., Payment*

*Devices,* VERIFONE, https://www.verifone.com/en/us/products (last visited July 18,

2025) (listing various Accused Products for sale); *Verifone and Dejavoo*

*Terminals: Leading Payment Solutions*, PAY ATLANTA GA,

https://payatlantaga.com/verifone-terminals/ (last visited Jul 18, 2025); *Verifone*,

POS POWERHOUSE, https://pospowerhouse.com/collections/verifone (last

visited Jul 18, 2025) (Stating, "POS Powerhouse is an official reseller of all

Verifone Terminals!" and listing "Country/region" as "United States").

11.    Upon information and belief, Verifone has placed and continues to

place infringing products and/or products that practice infringing processes into the

stream of commerce via established distribution channels comprising at least those

directed and controlled by Verifone and by Verifone's subsidiaries, distributors,

and/or customers, with the knowledge and/or intent that those products are and/or

will be imported, used, offered for sale, sold, and continue to be sold in the United

States and Georgia, including in this judicial district. For example, in 2017

Verifone reported net revenue in the United States of 627.718 million USD. *See*

Annual Report at 130. Systems accounted for approximately 58% and services accounted for approximately 42% of Verifone's global total net revenue in 2017. *See id.* at 58. As a result, Verifone has directly and/or vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed infringing Verifone devices and related wireless network services into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Georgia, including in this judicial district.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because, among other things, Verifone has regular and established places of business in this District, including at least 11700 Great Oaks Way Suites 150, 200 & 210, Alpharetta, GA, USA 30022.

## THE ASSERTED PATENTS AND TECHNOLOGY

13.    The Asserted Patents were invented by employees of Panasonic Corporation ("Panasonic"). Founded in 1918, Panasonic has been at the forefront of the electronics industry for over a century. Panasonic made numerous innovations in the home appliance, battery, mobile phone, and television industries. Indeed, Panasonic's invention of the "Paper Battery" in 1979 is widely credited as enabling the compact electronics of today. In 1991, Panasonic released

the Mova P, the smallest and lightest mobile phone on the market, which

revolutionized the industry by showing the demand for a compact, lightweight

device.  Panasonic also produced the first wide-format plasma display and

developed the first digital television for the U.S. market.  Panasonic's history of

innovation is also borne out by its intellectual property.  Indeed, a search of the

USPTO database where the patent assignee is "Panasonic" yields over 27,000

matches.

14.    The Asserted Patents cover various aspects of products (e.g., mobile

devices), methods (e.g., processes), and services that include, without limitation,

Verifone devices with cellular capabilities and services provided in connection

with these devices.  For example, the infringing products include Verifone mobile

devices that include functionality for performing an inter-RAT handover and LTE-

enabled mobile devices that are configured to utilize infringing licensed assisted

access (LAA) modems on wireless networks.  Examples include 4G- and 5G-

enabled mobile devices.  The Accused Products include, but are not limited to,

devices such as the Verifone Victa, T650p, V400m, T650c, T650m, Carbon

Mobile 5, e235 devices.

15.    The Accused Products of Verifone infringe at least claims of the '152

patent, which provide technological solutions and improvements to systems and

methods for selecting a cell to be used for communications by a mobile terminal

supporting a plurality of communications protocols, including at least the Accused Products that are LAA-enabled.  When the application that became the '152 patent was filed, the operation of cell reselection in LTE was undefined; however, the inventors of the '152 patent recognized a need for a system or method utilizing LTE that provides a cell reselection system capable of restricting the amount of data included in broadcast information in a mobile phone network, such as LTE, and appropriately selecting a cell even with an increase in the number of cells of other networks existing within the cell of the mobile phone network.  In exemplary embodiments, the '152 patent addresses this need by, *inter alia*, enabling a mobile terminal to judge whether to change a communication connection from a first cell to a second cell using specified parameters from the broadcast information of the first and second cell.

16.    The Accused Products of Verifone infringe at least claims of the '569 patent, which provide technological solutions and improvements to radio reception apparatus, a radio transmission apparatus, and a radio communication method which are applicable to a radio communication system such as a cellular system, including at least the Accused Products that are enabled to receive radio communication from an LTE cell.  When the application that became the '569 patent was filed, the inventors of the '569 patent recognized that existing cellular systems employed technical approaches to transmission that limited throughput

compared to an alternative technical approach developed by the inventors. Additionally, the inventors recognized that in the case where a second reference signal for a second communication system is transmitted in addition to a first reference signal for a first communication system, resources that affect a reception apparatus compatible only with the first communication can be minimized, preventing throughput deterioration.  In exemplary embodiments, the '569 patent addresses this problem by employing, *inter alia*, a radio communication method in a radio reception apparatus which performs communication by using a plurality of resources defined in a frequency-time domain, including acquiring distribution resource information for a second reference signal, using the second reference signal to measure channel quality of a transmission channel, and transmitting feedback information containing channel quality information indicative of channel quality, to the transmission apparatus.

17.     The Accused Products of Verifone infringe at least claims of the '723 patent, which provide technological solutions and improvements to apparatuses and methods relating to base stations and mobile stations that employ at least a first Radio Access Technology (RAT) and a second RAT, including at least the Accused Products that are enabled to perform inter-RAT handovers and connect wireless cellular networks.  When the application that became the '723 patent was filed, the inventors recognized that conventional techniques employed a control

channel for reporting information about RATs. Additionally, the inventors of the '723 patent recognized that as the number of mixed RATs increased, the capacity of the control channel would also need to increase if conventional techniques continued to be employed. Accordingly, the inventors of the '723 patent recognized the need for technical approach to communications that avoids the need for a control channel for reporting RAT information when a plurality of RATs are used in communication, such as occurs with relevant LTE communication protocols. In exemplary embodiments, the '723 patent addresses this need via, *inter alia*, a mobile station apparatus including: a transmitter configured to provide notification information to a base station employing a first RAT covering a first area that the mobile station apparatus is located in a second area employing a second RAT; and a controller configured to perform handover based on traffic control by the base station apparatus using the notification information.

18.     The Accused Products of Verifone infringe at least claims of the '453 patent, which provide technological solutions and improvements to methods and mobile nodes for establishing a secure tunnel to a trusted packet data gateway to prepare for a mobile node attachment or handover to another access network, including at least the Accused Products that are 4G or 5G-enabled. When the application that became the '453 patent was filed, the inventors of the '453 patent recognized that existing technical approaches to handovers could result in

13

undesirable delay. In exemplary embodiments, the '453 patent addresses this problem by, *inter alia*, a method for establishing a secure tunnel to a trusted packet data gateway upon a mobile node initially attaching to or performing a handover to a target access network.  In some embodiments, the method includes: determining from a reachability list maintained in the mobile node at least one trusted packet data gateway that is reachable through the target access network, wherein the reachability list lists data sets indicating data paths and the reachability status of respective known trusted packet data gateways for each respective data path; and establishing a secure tunnel to the trusted packet data gateway determined from the reachability list.

19.    Upon information and belief, a significant portion of the revenue of Verifone is derived from the manufacture, use, and/or sale of mobile devices and the provision of related services.  Verifone's mobile devices are utilized in wireless networks.  These wireless networks utilize a variety of radio access technologies ("RAT"), including, but not limited to, technologies such as UTRAN, GERAN, E-UTRAN, WLAN, 3GPP access systems, and non-3GPP access systems. Verifone's mobile devices are configured to support multiple RATs, which requires the handover of communication connections between different RAT systems to provide seamless communication for mobile device users.

20.    Certain Accused Products, including at least the Verifone Victa, T650p, V400m, T650c, T650m, Carbon Mobile 5, e235 devices, are enabled to utilize Licensed Assisted Access (LAA), which is a key feature of LTE-Advanced and a technical plank of 5G.  Such Accused Products are used in LAA networks of multiple deployment scenarios in which LAA SCells (small cells using unlicensed LTE spectrum) are included in LAA PCells (primary or macro cells using LTE licensed spectrum).  The LAA networks have a first cell using a first communication protocol (i.e., the LAA PCell) and a plurality of second cells (i.e., the SCells) which are included in the first cell, such as cellular LTE-A and 5G networks with LAA.  The second cells use a second communication protocol which is different from that for the first cell.  Below is an illustration of an LAA implemented in multiple technologies for multiple deployment scenarios.



*See LTE-U vs. Wi-Fi: What You Need To Know*, SMALLNETBUILDER,
https://www.smallnetbuilder.com/wireless/wireless-features/33090-lte-u-vs-wi-fi-
whatyou-need-to-know (last visited Mar. 3, 2020).

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,374,152)

21.    Plaintiff incorporates paragraphs 1 through 20 herein by reference.

22.    SPV is the assignee of the '152 patent, entitled "Cell Selection
System, Cell Selection Method, and Mobile Terminal," with ownership of all
substantial rights in the '152 patent, including the right to exclude others and
to enforce, sue, and recover damages for past and future infringements.

23.    The '152 patent is valid, enforceable, and was duly issued in full
compliance with Title 35 of the United States Code.  The '152 patent issued from
U.S. Patent Application No. 12/739,883.

24.    Verifone has and continues to directly and/or indirectly infringe (by
inducing infringement) one or more claims of the '152 patent in this judicial
district and elsewhere in Georgia and the United States.

25.    Upon information and belief, Verifone designs, develops,
manufactures, assembles, and/or markets mobile devices and phones configured to
connect to wireless cellular networks.  *See, e.g., Payment Devices,* VERIFONE,
https://www.verifone.com/en/us/products (last visited July 18, 2025) (listing
various Accused Products for sale); *Verifone and Dejavoo Terminals: Leading*

16

*Payment Solutions*, PAY ATLANTA GA, https://payatlantaga.com/verifone-

terminals/ (last visited Jul 18, 2025); *Verifone*, POS POWERHOUSE,

https://pospowerhouse.com/collections/verifone (last visited Jul 18, 2025) (Stating,

"POS Powerhouse is an official reseller of all Verifone Terminals!" and listing

"Country/region" as "United States").

26.    Verifone directly infringes the '152 patent via 35 U.S.C. § 271(a) by

making, offering for sale, selling, and/or importing those Accused Products, their

components and processes, and/or products containing the same that incorporate

the fundamental technologies covered by the '152 patent, for example, to its alter

egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or

consumers.  Furthermore, upon information and belief, Verifone sells and/or makes

the Accused Products inside the United States; and/or outside of the United States

and delivers those products to its customers, distributors, and/or subsidiaries in the

United States; and/or or in the case that it delivers the Accused Products outside of

the United States it does so intending and/or knowing that those products are

destined for the United States and/or designs those products for sale in the United

States, thereby directly infringing the '152 patent.  *See, e.g., Transocean Offshore

Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309

(Fed. Cir. 2010) ("In order for an offer to sell to constitute infringement, the offer

must be to sell a patented invention within the United States.  The focus should not

be on the location of the offer, but rather the location of the future sale that would occur pursuant to the offer.").  Furthermore, Verifone directly infringes the '152 patent through its own activities and/or direct involvement in the activities of its subsidiaries, including by selling and offering for sale the Accused Products in the United States and importing the Accused Products into the United States.  Upon information and belief, Verifone conducts activities that constitute direct infringement of the '152 patent under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing those Accused Products.  For example, and upon information and belief, Verifone installs, services, offers for sale, sells, and/or imports the Accused Products within the U.S. to its distributors, customers, subsidiaries, importers, and/or consumers.

27.    For example, Verifone infringes claim 9 of the '152 patent via the Accused Products such as the Verifone Victa, T650p, V400m, T650c, T650m, Carbon Mobile 5, e235 devices, which are configured to connect to wireless cellular networks.

28.    The Accused Products comprise a mobile terminal used in a network having a first cell using a first communication protocol and a plurality of second cells which are included in the first cell and use a second communication protocol which is different from that for the first cell, the mobile terminal supporting communications using the first and second communication protocols in both the

first and second cells.  The Accused Products include mobile devices that are configured to operate in LAA-enabled communication cells including a plurality of LAA cells.  As examples, LTE and LAA cells use different communication protocols.  Additionally, 4G and/or 5G-enabled mobile devices are LTE-enabled and backward compatible with LTE cells.

29.    The Accused Products comprise a first broadcast information receiver for receiving broadcast information of the first cell including cell selection information comprising a common parameter that is commonly used for a judgment on cell selection of all the second cells.  For example, the Accused Products include first receiver circuitry that is configured to receive over licensed spectrum cell selection information comprising a common parameter that is commonly used for a judgment on cell selection of all the second cells.  The Accused Products incorporate a baseband processor, such as those from Qualcomm and/or Quectel.  The following figure illustrates how a processor, for example, a Qualcomm processor, can be provided with a first broadcast information receiver.



Use of RF switches, switch modules, and embedded discrete band filters is illustrative of identified LG LAA UE having a mobile platform that includes a first receiver comprising a distinct receive path for licensed LTE traffic

30.     The Accused Products comprise a second broadcast information receiver for receiving broadcast information of one of the second cells including an individual parameter that is individually used for a judgment on cell selection of a second cell.  For example, the Accused Products include second receiver circuitry that is configured to receive over unlicensed spectrum an individual parameter that is individually used for a judgment on cell selection of a second cell from an LAA cell.  The following figure illustrates how a processor, for example, a Qualcomm processor, can be provided with a second broadcast information receiver.



31.     The Accused Products comprise a first broadcast information processor for reading the common parameter from the broadcast information of the first cell.  For example, for the Accused Products that are LAA-enabled and include a multi-core baseband processor, a processor core reads the common parameter from the broadcast information of the LTE cell.

32.     The Accused Products comprise a second broadcast information processor for reading the individual parameter from the broadcast information of

the second cell. For example, for the Accused Products that are LAA-enabled and include a multi-core baseband processor, a processor core reads the individual parameter from the broadcast information of the LAA cell.

33. The Accused Products comprise a cell change controller for judging by the common and individual parameters whether to change a communication connection of the mobile terminal from the first cell to the second cell. For example, for the Accused Products that are LAA-enabled and include a baseband processor, the baseband processor is programmed to judge using the common and individual parameters whether to change a communication connection from the LTE cell to the LAA cell.

34. Via incorporation of the above-described components and functionality, the Verifone Accused Products infringe the '152 patent.

35. At a minimum, Verifone has known of the '152 patent at least as early as the filing date of the original complaint in this matter. In addition, Verifone has known about the '152 patent since at least June 3, 2024—when SPV sent Verifone a letter providing notice of its infringement, including identification of the '152 patent. Further, on June 6, 2024, Verifone received an email with a letter providing detailed notice of its infringement including a link to a data room having claim charts demonstrating how Verifone infringed at least one claim of each of the Asserted Patents, including the '152 patent.

36.     Upon information and belief, since at least the above-mentioned date when Verifone was on notice of its infringement, Verifone has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '152 patent to directly infringe one or more claims of the '152 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Verifone does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '152 patent. Upon information and belief, Verifone intends to cause, and has taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, *The Future of Payments is Boundless*, VERIFONE,

https://www.verifone.com/en/us/about-us (last visited July 18, 2025) ("Verifone is a global payments technology company delivering distinctive payment experiences for everyone, everywhere."); *Thanks for dropping by*, VERIFONE, INC., https://www.verifone.com/en/global/contact/contact-us (last visited July 18, 2025) (Stating, "Our teams of experts are ready to design a payment solution that perfectly matches your business needs.  Tell us a little more about your requirements," and under the heading "Where We're Located," listing the address, "Verifone, 11700 Great Oaks Way, / Suites 150 & 200 / Alpharetta, GA, USA / 30022."); *Payment Devices,* VERIFONE, https://www.verifone.com/en/us/products (last visited July 18, 2025) (listing various Accused Products for sale); *Verifone,* VERIFONE, https://support.verifone.com/s/ (last visited July 28, 2025) (Under the heading "Technical Support," stating "Live representative, chat, support documentation, software + drivers"); *Verifone Operational Services,* VERIFONE, https://www.verifone.com/en/us/verifone-operational-services (last visited July 29, 2025) (Under the heading "Professional Installation," stating "Our installation services ensure your devices are installed by skilled professionals and operate smoothly."); *Verifone and Dejavoo Terminals: Leading Payment Solutions*, PAY ATLANTA GA, https://payatlantaga.com/verifone-terminals/ (last visited Jul 18, 2025); *Verifone*, POS POWERHOUSE, https://pospowerhouse.com/collections/verifone (last visited Jul 18, 2025) (Stating,

23

"POS Powerhouse is an official reseller of all Verifone Terminals!" and listing

"Country/region" as "United States").

37.     Upon information and belief, despite having knowledge of the '152

patent and knowledge that it is directly and/or indirectly infringing one or more

claims of the '152 patent, Verifone has nevertheless continued its infringing

conduct and disregarded an objectively high likelihood of infringement.

Verifone's infringing activities relative to the '152 patent have been, and continue

to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful,

flagrant, characteristic of a pirate, and an egregious case of misconduct beyond

typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to

enhanced damages up to three times the amount found or assessed.

38.     SPV has been damaged as a result of Verifone's infringing conduct

described in this Count.  Verifone is, thus, liable to SPV in an amount that

adequately compensates SPV for Verifone's infringements, which, by law, cannot

be less than a reasonable royalty, together with interest and costs as fixed by this

Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 8,442,569)

39.     Plaintiff incorporates paragraphs 1 through 20 herein by reference.

40.     SPV is the assignee of the '569 patent, entitled "Radio Reception Apparatus, Radio Transmission Apparatus, and Radio Communication Method," with ownership of all substantial rights in the '569 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

41.     The '569 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '569 patent issued from U.S. Patent Application No. 13/202,600.

42.     Verifone has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '569 patent in this judicial district and elsewhere in Georgia and the United States.

43.     Upon information and belief, Verifone designs, develops, manufactures, assembles and/or markets mobile devices and phones configured to connect to wireless cellular networks. *See, e.g., Payment Devices,* VERIFONE, https://www.verifone.com/en/us/products (last visited July 18, 2025) (listing various Accused Products for sale); *Verifone and Dejavoo Terminals: Leading Payment Solutions*, PAY ATLANTA GA, https://payatlantaga.com/verifone-terminals/ (last visited Jul 18, 2025); *Verifone*, POS POWERHOUSE, https://pospowerhouse.com/collections/verifone (last visited Jul 18, 2025) (Stating,

"POS Powerhouse is an official reseller of all Verifone Terminals!" and listing "Country/region" as "United States").

44.    Verifone directly infringes the '569 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '569 patent, for example, to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers.  Furthermore, upon information and belief, Verifone sells and/or makes the Accused Products inside the United States; and/or outside of the United States and delivers those products to its customers, distributors, and/or subsidiaries in the United States; and/or or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designs those products for sale in the United States, thereby directly infringing the '569 patent.  *See, e.g., Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed. Cir. 2010) ("In order for an offer to sell to constitute infringement, the offer must be to sell a patented invention within the United States.  The focus should not be on the location of the offer, but rather the location of the future sale that would occur pursuant to the offer."); *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013) (Holding: "there

remains a genuine issue of material fact as to whether accused products

manufactured and delivered abroad but imported into the United States market by

downstream customers (e.g. the hard drive manufacturers and original equipment

manufacturers that install hard drives before importing them) constitute an

infringing sale under § 271(a).").  Furthermore, Verifone directly infringes the

'569 patent through its own activities and/or direct involvement in the activities of

its subsidiaries, including by selling and offering for sale the Accused Products in

the United States and importing the Accused Products into the United States.

Upon information and belief, Verifone conducts activities that constitute direct

infringement of the '569 patent under 35 U.S.C. § 271(a) by making, using,

offering for sale, selling, and/or importing those Accused Products.  For example,

and upon information and belief, Verifone installs, services, offers for sale, sells,

and/or imports the Accused Products within the U.S. to its distributors, customers,

subsidiaries, importers, and/or consumers.

45.    For example, Verifone infringes claim 11 of the '569 patent via the

Accused Products such as the Verifone Victa, T650p, V400m, T650c, T650m,

Carbon Mobile 5, e235 devices, which are configured to connect to wireless

cellular networks.

46.    The Accused Products implement "[a] radio communication method

in a radio reception apparatus which performs communication by using a plurality

27

of resources defined in a frequency-time domain" of claim 11. The Accused

Products include mobile devices that receive radio communication from an LTE

cell. When operated in certain cellular networks, the Accused Products use a

plurality of resources defined in a frequency-time domain.

47.    The Accused Products acquire distribution resource information for a

second reference signal when the second reference signal for a second

communication system is transmitted from a radio transmission apparatus in

addition to transmitting a first reference signal for a first communication system, in

a case where distributed type resources in which a resource unit defined in the

frequency-time domain is divided in a time direction and distributedly allocated at

predetermined frequency intervals are used as resources for the second reference

signal. For example, the Accused Products include a modem that acquires

distribution resource information (e.g., a discovery reference signal ("DRS")) as a

reference signal for a SCell (e.g., LTE over unlicensed spectrum) from a radio

transmission apparatus (e.g., a base station) that transmits reference signals for the

SCell and a PCell (e.g., LTE over licensed spectrum). Distributed type resources

used for the DRS have resource units defined in the frequency-time domain and are

divided in a time direction and distributedly allocated at predetermined frequency

intervals.

48.    The Accused Products receive a signal containing the second reference signal transmitted from the transmission apparatus.  The Accused Products incorporate a chip, such as those from Qualcomm and/or Quectel, containing an RF transceiver which is configured to receive the second reference signal from the transmission apparatus.

49.    The Accused Products measure a channel quality of a transmission channel by using the second reference signal that is allocated in the distributed type resources on the basis of the distribution resource information.  For example, the Accused Products include a chip, such as those from Qualcomm or Quectel, that measures a channel quality of a transmission channel by using the received DRS from the LAA SCell.  To further illustrate how the asserted claim elements can be performed by the Accused Products, an exemplary Qualcomm mobile platform contains components for measuring a channel quality, for example, components used in connection with a Qualcomm RF Front End.

50.    The Accused Products transmit feedback information containing channel quality information indicative of the channel quality, to the transmission apparatus.  For example, the Accused Products include components with an RF transceiver which transmits feedback information containing channel quality information to the base station.

51.     Via incorporation of the above-described components and functionality, the Verifone Accused Products infringe the '569 patent.

52.     At a minimum, Verifone has known of the '569 patent at least as early as the filing date of the original complaint in this matter.  In addition, Verifone has known about the '569 patent since at least June 3, 2024—when SPV sent Verifone a letter providing notice of its infringement, including identification of the '569 patent.  Further, on June 6, 2024, Verifone received an email with a letter providing detailed notice of its infringement including a link to a data room having claim charts demonstrating how Verifone infringed at least one claim of each of the Asserted Patents, including the '569 patent.

53.     Upon information and belief, since at least the above-mentioned date when Verifone was on notice of its infringement, Verifone has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '569 patent to directly infringe one or more claims of the '569 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Verifone does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '569 patent.  Upon information and belief, Verifone intends to cause, and has taken

affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, *The Future of Payments is Boundless*, VERIFONE,

https://www.verifone.com/en/us/about-us (last visited July 18, 2025) ("Verifone is a global payments technology company delivering distinctive payment experiences for everyone, everywhere."); *Thanks for dropping by*, VERIFONE, INC.,

https://www.verifone.com/en/global/contact/contact-us (last visited July 18, 2025) (Stating, "Our teams of experts are ready to design a payment solution that perfectly matches your business needs.  Tell us a little more about your requirements," and under the heading "Where We're Located," listing the address, "Verifone, 11700 Great Oaks Way, / Suites 150 & 200 / Alpharetta, GA, USA / 30022."); *Payment Devices,* VERIFONE*,* https://www.verifone.com/en/us/products (last visited July 18, 2025) (listing various Accused Products for sale); *Verifone,*

VERIFONE, https://support.verifone.com/s/ (last visited July 28, 2025) (Under the heading "Technical Support," stating "Live representative, chat, support documentation, software + drivers"); *Verifone Operational Services,* VERIFONE, https://www.verifone.com/en/us/verifone-operational-services (last visited July 29, 2025) (Under the heading "Professional Installation," stating "Our installation services ensure your devices are installed by skilled professionals and operate smoothly."); *Verifone and Dejavoo Terminals: Leading Payment Solutions*, PAY ATLANTA GA, https://payatlantaga.com/verifone-terminals/ (last visited Jul 18, 2025); *Verifone*, POS POWERHOUSE, https://pospowerhouse.com/collections/verifone (last visited Jul 18, 2025) (Stating, "POS Powerhouse is an official reseller of all Verifone Terminals!" and listing "Country/region" as "United States").

54.     Upon information and belief, despite having knowledge of the '569 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '569 patent, Verifone has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Verifone's infringing activities relative to the '569 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond

typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

55.    SPV has been damaged as a result of Verifone's infringing conduct described in this Count.  Verifone is, thus, liable to SPV in an amount that adequately compensates SPV for Verifone's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III
### (INFRINGEMENT OF U.S. PATENT NO. 8,467,723)

56.    Plaintiff incorporates paragraphs 1 through 20 herein by reference.

57.    SPV is the assignee of the '723 patent, entitled "Base Station Apparatus, Mobile Apparatus, and Communication Method," with ownership of all substantial rights in the '723 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

58.    The '723 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '723 patent issued from U.S. Patent Application No. 13/585,621.

59.    Verifone has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '723 patent in this judicial district and elsewhere in Georgia and the United States.

60.    Upon information and belief, Verifone designs, develops, manufactures, assembles and/or markets mobile devices and phones configured to connect to wireless cellular networks. *See, e.g., Payment Devices,* VERIFONE, https://www.verifone.com/en/us/products (last visited July 18, 2025) (listing various Accused Products for sale); *Verifone and Dejavoo Terminals: Leading Payment Solutions*, PAY ATLANTA GA, https://payatlantaga.com/verifone-terminals/ (last visited Jul 18, 2025); *Verifone*, POS POWERHOUSE, https://pospowerhouse.com/collections/verifone (last visited Jul 18, 2025) (Stating, "POS Powerhouse is an official reseller of all Verifone Terminals!" and listing "Country/region" as "United States").

61.    Verifone directly infringes the '723 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '723 patent, for example, to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Verifone sells and/or makes the Accused Products inside the United States; and/or outside of the United States and delivers those products to its customers, distributors, and/or subsidiaries in the United States; and/or or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are

34

destined for the United States and/or designs those products for sale in the United States, thereby directly infringing the '723 patent. *See, e.g., Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed. Cir. 2010) ("In order for an offer to sell to constitute infringement, the offer must be to sell a patented invention within the United States. The focus should not be on the location of the offer, but rather the location of the future sale that would occur pursuant to the offer."); *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013) (Holding: "there remains a genuine issue of material fact as to whether accused products manufactured and delivered abroad but imported into the United States market by downstream customers (e.g. the hard drive manufacturers and original equipment manufacturers that install hard drives before importing them) constitute an infringing sale under § 271(a)."). Furthermore, Verifone directly infringes the '723 patent through its own activities and/or direct involvement in the activities of its subsidiaries, including by selling and offering for sale the Accused Products in the United States and importing the Accused Products into the United States. Upon information and belief, Verifone conducts activities that constitute direct infringement of the '723 patent under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing those Accused Products. For example, and upon information and belief, Verifone installs, services, offers for sale, sells,

and/or imports the Accused Products within the U.S. to its distributors, customers, subsidiaries, importers, and/or consumers.

62.     For example, Verifone infringes claim 5 of the '723 patent via the Accused Products such as the Verifone Victa, T650p, V400m, T650c, T650m, Carbon Mobile 5, e235 devices among other Verifone devices sold during the statutory damages period that perform inter-RAT handovers and are configured to connect wireless cellular networks.

63.     The Accused Products include "[a] mobile station apparatus that belongs to a first area which is covered by a base station apparatus employing a first Radio Access Technology (RAT), the first area including part or entirety of a second area which is covered by a host station employing a second RAT different from the first RAT" as recited in claim 5.  The Accused Products include at least one mobile station that performs inter-RAT handovers, where the mobile station's radio connection is switched from a first base station (e.g., LTE eNB) that employs a first RAT (e.g., LTE) to a second base station (e.g., RNC/NodeB) that employs a second (and different) RAT (e.g., GERAN/UTRAN). RAT handover scenarios include handovers between E-UTRAN (LTE) and UTRAN or GERAN (both 3G). Further, the Accused Products that are 4G- and/or 5G-enabled are also LTE-enabled.

64.    The Accused Products include a mobile station apparatus comprising a transmitter configured to transmit, to the base station apparatus, notification information while the mobile station apparatus is using the first RAT when the mobile station apparatus detects that the mobile station apparatus is located in the second area while using the first RAT.  For example, the Accused Products include a transmitter (e.g., an RF transceiver coupled to a RF front end and an antenna) to transmit notification information, e.g., measurement information, to the E-UTRAN eNB (i.e., the base station) which is using a first RAT (e.g., LTE).  Such a transmission occurs when the mobile station detects that it is located in a second area (e.g., within a 3G radio cell while still connected to the LTE base station).

65.    The Accused Products include a controller configured to perform a handover based on traffic control by the base station apparatus using the notification information.  For example, the Accused Products have a controller that is responsive to a handover message received from the LTE eNB, based on the notification information (e.g., the measurement information).

66.    Via incorporation of the above-described components and functionality, the Verifone Accused Products infringe the '723 patent.

67.    At a minimum, Verifone has known of the '723 patent at least as early as the filing date of the original complaint in this matter.  In addition, Verifone has known about the '723 patent since at least June 3, 2024—when SPV

sent Verifone a letter providing notice of its infringement, including identification of the '723 patent.  Further, on June 6, 2024, Verifone received an email with a letter providing detailed notice of its infringement including a link to a data room having claim charts demonstrating how Verifone infringed at least one claim of each of the Asserted Patents, including the '723 patent.

68.    Upon information and belief, since at least the above-mentioned date when Verifone was on notice of its infringement, Verifone has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '723 patent to directly infringe one or more claims of the '723 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Verifone does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '723 patent.  Upon information and belief, Verifone intends to cause, and has taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws

38

and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, *The Future of Payments is Boundless*, VERIFONE, https://www.verifone.com/en/us/about-us (last visited July 18, 2025) ("Verifone is a global payments technology company delivering distinctive payment experiences for everyone, everywhere."); *Thanks for dropping by*, VERIFONE, INC., https://www.verifone.com/en/global/contact/contact-us (last visited July 18, 2025) (Stating, "Our teams of experts are ready to design a payment solution that perfectly matches your business needs. Tell us a little more about your requirements," and under the heading "Where We're Located," listing the address, "Verifone, 11700 Great Oaks Way, / Suites 150 & 200 / Alpharetta, GA, USA / 30022."); *Payment Devices,* VERIFONE, https://www.verifone.com/en/us/products (last visited July 18, 2025) (listing various Accused Products for sale); *Verifone,* VERIFONE, https://support.verifone.com/s/ (last visited July 28, 2025) (Under the heading "Technical Support," stating "Live representative, chat, support documentation, software + drivers"); *Verifone Operational Services,* VERIFONE, https://www.verifone.com/en/us/verifone-operational-services (last visited July 29, 2025) (Under the heading "Professional Installation," stating "Our installation

services ensure your devices are installed by skilled professionals and operate smoothly."); *Verifone and Dejavoo Terminals: Leading Payment Solutions*, PAY ATLANTA GA, https://payatlantaga.com/verifone-terminals/ (last visited Jul 18, 2025); *Verifone*, POS POWERHOUSE, https://pospowerhouse.com/collections/verifone (last visited Jul 18, 2025) (Stating, "POS Powerhouse is an official reseller of all Verifone Terminals!" and listing "Country/region" as "United States").

69.     Upon information and belief, despite having knowledge of the '723 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '723 patent, Verifone has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Verifone's infringing activities relative to the '723 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

70.     SPV has been damaged as a result of Verifone's infringing conduct described in this Count.  Verifone is, thus, liable to SPV in an amount that adequately compensates SPV for Verifone's infringements, which, by law, cannot

be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV
### (INFRINGEMENT OF U.S. PATENT NO. 8,792,453)

71.     Plaintiff incorporates paragraphs 1 through 20 herein by reference.

72.     SPV is the assignee of the '453 patent, entitled "Secure Tunnel Establishment Upon Attachment or Handover to an Access Network," with ownership of all substantial rights in the '453 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

73.     The '453 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The '453 patent issued from U.S. Patent Application No. 13/126,924.

74.     Verifone has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '453 patent in this judicial district and elsewhere in Georgia and the United States.

75.     Upon information and belief, Verifone designs, develops, manufactures, assembles and/or markets mobile devices and phones configured to connect to wireless cellular networks.  *See, e.g., Payment Devices,* VERIFONE, https://www.verifone.com/en/us/products (last visited July 18, 2025) (listing

41

various Accused Products for sale); *Verifone and Dejavoo Terminals: Leading Payment Solutions*, PAY ATLANTA GA, https://payatlantaga.com/verifone-terminals/ (last visited Jul 18, 2025); *Verifone*, POS POWERHOUSE, https://pospowerhouse.com/collections/verifone (last visited Jul 18, 2025) (Stating, "POS Powerhouse is an official reseller of all Verifone Terminals!" and listing "Country/region" as "United States").

76.    Verifone directly infringes the '453 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing same that incorporate the fundamental technologies covered by the '453 patent, for example, to its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Verifone sells and/or makes the Accused Products inside the United States; and/or outside of the United States and delivers those products to its customers, distributors, and/or subsidiaries in the United States; and/or or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designs those products for sale in the United States, thereby directly infringing the '453 patent. *See, e.g., Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed. Cir. 2010) ("In order for an offer to sell to constitute infringement, the offer

must be to sell a patented invention within the United States. The focus should not be on the location of the offer, but rather the location of the future sale that would occur pursuant to the offer."); *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013) (Holding: "there remains a genuine issue of material fact as to whether accused products manufactured and delivered abroad but imported into the United States market by downstream customers (e.g. the hard drive manufacturers and original equipment manufacturers that install hard drives before importing them) constitute an infringing sale under § 271(a)."). Furthermore, Verifone directly infringes the '453 patent through its own activities and/or direct involvement in the activities of its subsidiaries, including by selling and offering for sale the Accused Products in the United States and importing the Accused Products into the United States. Upon information and belief, Verifone conducts activities that constitute direct infringement of the '453 patent under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing those Accused Products. For example, and upon information and belief, Verifone installs, services, offers for sale, sells, and/or imports the Accused Products within the U.S. to its distributors, customers, subsidiaries, importers, and/or consumers.

77.    For example, Verifone infringes claim 1 of the '453 patent via the Accused Products such as the Verifone Victa, T650p, V400m, T650c, T650m,

43

Carbon Mobile 5, e235 devices, among other Verifone devices sold during the statutory damages period, which are configured to connect to wireless cellular networks. The Accused Products include, but are not limited to, Verifone's 4G- and 5G-enabled mobile devices.

78.    The Accused Products implement the "method for establishing a secure tunnel to a trusted packet data gateway upon a mobile node initially attaching to or performing a handover to a target access network" of claim 1. The Accused Products include mobile devices that establish a secure tunnel to a trusted packet data gateway upon the mobile phone initially attaching to or performing a handover to a target access network. This occurs when the mobile phone establishes an IPsec tunnel with an evolved packet data gateway (ePDG) in a target access network.

79.    For example, the Accused Products determine from a reachability list maintained in the mobile node at least one trusted packet data gateway that is reachable through the target access network, wherein the reachability list lists data sets indicating data paths and the reachability status of respective known trusted packet data gateways for each respective data path. For example, the Accused Products are User Equipment ("UE"). Each Accused Product has a pre-configured list (i.e., reachability list) with non-3GPP access technologies, access networks, or serving network operators that allow for trusted non-3GPP IP access. The mobile

44

phone receives an indication of whether the non-3GPP IP access is trusted or not. The reachability list lists data path indication, including an access point name and/or an access point IP address.

80. The Accused Products establish a secure tunnel to the trusted packet data gateway determined from the reachability list maintained in the mobile node, the secure tunnel is established prior to the attachment to the target access network. For example, the 3GPP mobile phone establishes a secure IPsec tunnel to the trusted packet data gateway (ePDG) determined from the reachability list maintained in the mobile phone prior to attaching to the target access network.

81. Via incorporation of the above-described components and functionality, the Verifone Accused Products infringe the '453 patent.

82. At a minimum, Verifone has known of the '453 patent at least as early as the filing date of the original complaint in this matter. In addition, Verifone has known about the '453 patent since at least June 3, 2024—when SPV sent Verifone a letter providing notice of its infringement, including identification of the '453 patent. Further, on June 6, 2024, Verifone received an email with a letter providing detailed notice of its infringement including a link to a data room having claim charts demonstrating how Verifone infringed at least one claim of each of the Asserted Patents, including the '453 patent.

83.     Upon information and belief, since at least the above-mentioned date when Verifone was on notice of its infringement, Verifone has actively induced, under 35 U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '453 patent to directly infringe one or more claims of the '453 patent by using, offering for sale, selling, and/or importing the Accused Products.  Since at least the notice provided on the above-mentioned date, Verifone does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '453 patent.  Upon information and belief, Verifone intends to cause, and has taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, *The Future of Payments is Boundless*, VERIFONE,

https://www.verifone.com/en/us/about-us (last visited July 18, 2025) ("Verifone is a global payments technology company delivering distinctive payment experiences for everyone, everywhere."); *Thanks for dropping by*, VERIFONE, INC., https://www.verifone.com/en/global/contact/contact-us (last visited July 18, 2025) (Stating, "Our teams of experts are ready to design a payment solution that perfectly matches your business needs.  Tell us a little more about your requirements," and under the heading "Where We're Located," listing the address, "Verifone, 11700 Great Oaks Way, / Suites 150 & 200 / Alpharetta, GA, USA / 30022."); *Payment Devices,* VERIFONE, https://www.verifone.com/en/us/products (last visited July 18, 2025) (listing various Accused Products for sale); *Verifone Operational Services,* VERIFONE, https://www.verifone.com/en/us/verifone-operational-services (last visited July 29, 2025) (Under the heading "Professional Installation," stating "Our installation services ensure your devices are installed by skilled professionals and operate smoothly."); *Verifone,* VERIFONE, https://support.verifone.com/s/ (last visited July 28, 2025) (Under the heading "Technical Support," stating "Live representative, chat, support documentation, software + drivers"); *Verifone Operational Services,* VERIFONE, https://www.verifone.com/en/us/verifone-operational-services (last visited July 29, 2025) (Under the heading "Professional Installation," stating "Our installation services ensure your devices are installed by skilled professionals and operate

smoothly."); *Verifone and Dejavoo Terminals: Leading Payment Solutions*, PAY ATLANTA GA, https://payatlantaga.com/verifone-terminals/ (last visited Jul 18, 2025); *Verifone*, POS POWERHOUSE, https://pospowerhouse.com/collections/verifone (last visited Jul 18, 2025) (Stating, "POS Powerhouse is an official reseller of all Verifone Terminals!" and listing "Country/region" as "United States").

84.    Upon information and belief, despite having knowledge of the '453 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '453 patent, Verifone has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Verifone's infringing activities relative to the '453 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

85.    SPV has been damaged as a result of Verifone's infringing conduct described in this Count. Verifone is, thus, liable to SPV in an amount that adequately compensates SPV for Verifone's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

86.    Plaintiff is entitled to recover from Verifone the damages sustained by Plaintiff as a result of Verifone's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

87.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action.  The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

88.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

89.    Plaintiff respectfully requests that the Court find in its favor and against Verifone, and that the Court grant Plaintiff the following relief:

A.    A judgment that Verifone has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

**B.**    A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Verifone;

**C.**    A judgment and order requiring Verifone to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

**D.**    A judgment and order requiring Verifone to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

**E.**    A judgment and order finding this to be an exceptional case and requiring Verifone to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

**F.**    Such other and further relief as the Court deems just and equitable.

Dated:  August 20, 2025                Respectfully submitted,

*/s/ Daniel A. Kent*
    Daniel A. Kent
     Ga. Bar No. 415110
     dankent@kentrisley.com
     Tel:  (404) 585-4214
     Fax:  (404) 829-2412
    **KENT & RISLEY LLC**
    5755 N Point Pkwy Ste 57
    Alpharetta, GA 30022

    *Pro hac vice* forthcoming for:

    Terry A. Saad (lead attorney)
    Texas Bar No. 24066015
    E-mail: tsaad@bosfirm.com
    Jeffrey R. Bragalone (lead attorney)
    Texas Bar No. 02855775
    E-mail: jbragalone@bosfirm.com
    Marcus Benavides
    Texas Bar No. 24035574
    E-mail: mbenavides@bosfirm.com
    Brandon V. Zuniga
    Texas Bar no. 24088720
    E-mail: bzuniga@bosfirm.com
    Mark M.R. Douglass
    Texas Bar No. 24131184
    E-mail: mdouglass@bosfirm.com
    **BRAGALONE OLEJKO SAAD PC**
    901 Main Street
    Suite 3800
    Dallas, Texas 75202
    Telephone:  (214) 785-6670
    Facsimile:  (214) 785-6680

    **ATTORNEYS FOR PLAINTIFF**
    **SOVEREIGN PEAK VENTURES, LLC**